UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- X
: 
U.S. UNDERWRITERS INSURANCE COMPANY, : 10-CV-1595 (ARR)(JMA)
:
          Plaintiff, : NOT FOR ELECTRONIC
: OR PRINT PUBLICATION
  -against- :
: OPINION & ORDER
14-33/35 ASTORIA BOULEVARD; PARMA TILE :
MOSAIC & MARBLE CO., INC.; JAMES VISSAS; :
HERMITAGE INS. CO.; POLIS, INC; GEORGE'S HOME :
IMPROVEMENT CORP.; GEORGE SIFOUNIOS; CISCO :
GENERAL CONSTRUCTION, INC.; ALPHA :
ENGINEERING & INSPECTION, P.C.; ANTHONY :
HATZIIOANNOU ARCHITECT, AIA; ANTHONY :
HATZIIOANNOU; MOUAD MOQRANE; and HASSAN :
LAZGANI, :
:
          Defendants. :
:
---------------------------------------------------------------------- X
ROSS, United States District Judge:

      U.S. Underwriters Insurance Company ("plaintiff") moves for reconsideration of this court's prior order denying summary judgment as to its claim for rescission of an insurance policy (the "Policy") that it issued to defendant 14-33/35 Astoria Boulevard ("14-33/35 Astoria"). Plaintiff argues that new evidence in the form of deposition testimony from defendant James Vissas, principal of 14-33/35 Astoria, merits reconsideration of the earlier ruling. Specifically, plaintiff argues that, in light of the new evidence, there is no longer a genuine issue of material fact as to whether material misrepresentations were made in connection with 14-33/35 Astoria's insurance application, and that accordingly the Policy should be treated as void ab initio. For the reasons stated below, the court agrees with plaintiff and, upon reconsideration of its prior decision, grants plaintiff's motion for summary judgment.

**BACKGROUND**

The court assumes familiarity with the underlying facts as described in its opinion of December 27, 2011. See Order of Dec. 27, 2011 ("2011 Order"), DE #61. A summary of the procedural history and subsequent factual developments follows to supplement the facts in the 2011 Order.

**I.    Plaintiff's Prior Summary Judgment Motion**

In 2011, plaintiff moved for summary judgment on the grounds that defendant 14-33/35 Astoria made material misrepresentations in its application for an Owner's Protective Insurance Policy. DE #40. Of relevance here, plaintiff argued in its motion that 14-33/35 Astoria misrepresented on its insurance application that Parma Tile Mosaic & Marble Co. ("Parma Tile," an entity wholly owned by defendant James Vissas, who is also the sole owner and principal for 14-33/35 Astoria) would be the general contractor for the proposed project, and that this misrepresentation was material and warranted rescission of the Policy.

As part of its application process, plaintiff required 14-33/35 Astoria to provide it with a signed copy of the contract between 14-33/35 Astoria and the general contractor for the proposed project as well as proof of insurance from the general contractor naming 14-33/35 Astoria as an additional insured. 2011 Order, at 3. On the application form, 14-33/35 Astoria answered "yes" to questions about whether it was hiring a general contractor to handle the entire project and whether the general contractor had a minimum level of insurance naming 14-33/35 Astoria as an additional insured. Id. at 4. In connection with its insurance application, 14-33/35 Astoria submitted (1) a copy of a contract between Parma Tile and 14-33/35 Astoria signed by Vissas and listing work "to be completed by Parma Tile Mosaic & Marble Co. on behalf of 14-33/35

2

Astoria Blvd. LLC"[1] and (2) an ACORD Certificate of Liability insurance on behalf of Parma Title, held by 14-33/35 Astoria. Id.; Decl. of Steven Verveniotis in Supp. of Pl.'s Mot. for Recons. of Summ. J. ("Verveniotis Decl."), DE #109, Ex. B.

During the deposition of Vissas in connection with this case, plaintiff's counsel asked him about the contract between 14-33/35 Astoria and Parma Tile submitted with the insurance application:

> Q. Did Parma Tile do that work for 14-33/35?
> A. Of course not.
> Q. No? So you signed this document?
> A. Yes.
> Q. Why did you sign it?
> A. I don't remember if it was anything – first of all, this is not my stationery, Parma Tile.
> Q. Sir, my question is: Why did you sign it?
> A. My answer is, I don't know.

2011 Order at 6. At another point in the deposition, Vissas stated that George's Home Improvement ("GHI") was the general contractor for the 14-33/35 Astoria project but that they had an oral rather than written agreement for GHI's services.[2] Id. at 6-7. He also stated that Parma Tile never bought insurance as a general contractor. Id. at 7.

In an affidavit accompanying 14-33/35 Astoria's opposition to plaintiff's original summary judgment motion, Vissas stated that he was "seriously considering" having Parma Tile serve as the general contractor for the project. Aff. of James Vissas ("Vissas Aff."), DE #44, Ex. 2, at 2. According to Vissas's affidavit, he intended to have Parma Tile pay the bills and approve the trades working on the construction project. Id. He further stated:

---

[1] The contract estimates a work duration of 12 months and states that Parma Tile's responsibilities will be: structural work ($85,000), brick/masonry ($70,000), electrical ($35,000), plumbing ($35,000), interior carpentry ($100,000), and architect/engineer/permits ($150,000). Verveniotis Decl., Ex. B.
[2] In his deposition, George Sifounis refuted that his company, GHI, was the general contractor and indicated, instead, that James Vissas himself was to serve as general contractor. Id. at 8 n.4.

3

> I duly submitted a contract and I requested from my insurance broker to have 14-33/35 Astoria Blvd LLC as an additional insured [on Parma Tile's insurance]. Therefore, all the documents, annexed hereto as EXHIBIT A, were true to the best of my knowledge and belief and not [sic] material misrepresentations were made at the time of the application. However, subsequently, I was not able to have [Parma Tile] as a general contractor for the construction that is why I hired [GHI] to act as a General contractor.

Id. Vissas went on to state that Parma Tile ended up serving only a financing function for the project and paying the contractors who worked at the construction site. Id. at 3. It never supervised any contractor or subcontractor for the site. Id.

Relying on Vissas's affidavit stating that, at the time of the insurance application, he intended to use Parma Tile as the general contractor, this court denied summary judgment because it found that there was a genuine issue of material fact as to whether the representation that Parma Tile was the general contractor was false at the time it was made. 2011 Order at 15. This court found that, although there was evidence that Parma Tile did not actually serve as the general contractor, there was evidence indicating that Vissas had intended hire Parma Tile as the general contractor when he filled out the application. Id. at 16. The court concluded that the Vissas affidavit created a genuine issue as to whether, at the time of the insurance application, there was a false "statement as to past or present fact" that, if material, would justify rescission of the Policy contract. Id. at 14 (quoting N.Y. Ins. Law § 3105(a)).[3]

## II. The Subsequent Deposition Testimony of James Vissas

Since this court's denial of summary judgment in December 2011, this case has proceeded forward in conjunction with parallel proceedings in state court. Among the New York state court actions is an insurance broker malpractice suit brought by James Vissas and his two

---

[3] Following this court's denial of summary judgment, plaintiff moved for reconsideration of the court's order on grounds not directly pertinent to this opinion, and the court denied reconsideration as well as leave to file an interlocutory appeal. Mar. 28, 2012 Opinion & Order, DE #70.

4

wholly-owned entities, Parma Tile Mosaic & Marble Co., Inc. et al. v. Lyons General Insurance Agency Inc. et al., No. 27313/11.  Vissas was deposed in September 2013 in connection with that action, and it is his testimony from that deposition (the "2013 Deposition") that gave rise to the present motion for reconsideration.

In the 2013 Deposition, Vissas reconfirmed that GHI was the general contractor and that Parma Tile never served as general contractor or hired any other contractors for the project. Verveniotis Decl., Ex. E, at 31.  He also reiterated that Parma Tile's sole function with respect to the project was to provide financing and pay money out for the project.  Id. at 33. Unlike in his prior affidavit, however, Vissas did not testify that he had initially intended to use Parma Tile as the general contractor.  Instead, when asked whether, before the construction commenced, he was "seriously considering" using Parma Tile as the general contractor, he stated:  "I don't remember."  Id. at 63.

The counsel deposing Vissas confronted him with his prior affidavit stating his intention to use Parma Tile, but Vissas testified that he did not remember anything about it.  Id.  Counsel then pressed Vissas on his statements in the prior affidavit:

> Q.  But at the time the affidavit was prepared, do you recall the statements that you made?
> A.  No.
> Q.  So when you made the affidavit you didn't know what was going into this affidavit?
> A.  No.
> Q.  You knew what was going into the affidavit?
> A.  I would say no.
> . . . .
> Q.  It's [sic] says "Subsequently I . . . was not able to have Parma Tile Mosaic & Marble as the general contractor for construction.  That's why I hired George Home Improvement."  Do you know when that occurred?
> A.  No.

Id. at 63-64.

Deposing counsel also asked Vissas about the purported contract between Parma Tile and 14-33/35 Astoria that was submitted in connection with the insurance application. Vissas responded that the signature on the page was his but that he believes the document was blank when he signed it. He testified as follows after reviewing the document:

> Q. What about above "Description and Costs"? There is a sentence there, can you read that?
> A. "Work to be completed by Parma Tile Mosaic & Marble on behalf of" – that I don't remember. I read whatever is there but I don't remember signing a document like that. Even though the signature is mine.
> Q. So you're telling me the signature is yours? I'm just trying to reconcile this. The signature is yours but you don't remember reading it; is that true?
> A. I don't remember seeing that.
> . . . .
> Q. But you signed the document that's in front of you, . . . and you don't remember if you read it?
> A. I don't remember the numbers being there and anything else.

Id. at 51-52. Deposing counsel then went through each of the types of work and amounts listed on the contract to be performed by Parma Tile, and Vissas testified that he did not remember them or know where they came from. Id. at 52-53.

When asked about the insurance application itself, Vissas similarly testified that it was his signature on the page but that he did not recall any of the information on the application and did not believe that he filled it out. Id. at 54-57. Vissas testified that he believed that both the insurance application and the contract were blank when he signed them and that someone else must have filled them out later. Id. at 57-59. Vissas did not know where the information on either document came from. Id. at 58.

Based on Vissas's 2013 Deposition testimony, plaintiff now asks the court to reconsider its prior decision. Plaintiff argues that there is no longer a genuine fact issue as to whether Vissas intended to use Parma Tile as the general contractor because (1) Vissas's prior affidavit

6

cannot be relied on as evidence given that it contradicts his subsequent testimony from the 2013 Deposition and (2) his more recent testimony that he does not remember whether he intended to use Parma Tile as the general contractor demonstrates that he would be unable to testify as to his intentions at trial. Accordingly, plaintiff asks the court to find that 14-33/35 Astoria made material misrepresentations about the project's general contractor on its insurance application such as to warrant rescission.

**DISCUSSION**

**I.     Standard for Reconsideration[4]**

"[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked---matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted). Where a party moves for reconsideration based on new evidence, "the moving party must demonstrate that the newly discovered evidence was neither in his possession nor available upon the exercise of reasonable diligence at the time the interlocutory decision was rendered." Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers of N.J., 894 F. Supp. 2d 288, 339 (S.D.N.Y. 2012) (internal

---

[4] Under Local Civil Rule 6.3 of the Local Rules of the United States Court for the Southern and Eastern Districts of New York, a motion for reconsideration of a court order determining a motion must be served within 14 days of the court order, unless otherwise provided by the court or by statute or rule. Although plaintiff files its motion for reconsideration beyond the time limits prescribed by Local Civil Rule 6.3, a district court "retains absolute authority to reconsider or otherwise affect its interlocutory orders any time prior to appeal." Williams v. Cnty. of Nassau, 779 F. Supp. 2d 276, 280 (E.D.N.Y. 2011); see also Lichtenberg v. Besicorp Grp. Inc., 204 F.3d 387, 403-04 (2d Cir. 2000) (district court may extend time limit under Local Civil Rule 6.3). This court granted plaintiff permission to bring its motion out-of-time, DE #100, and accordingly it treats the motion as timely.

7

quotation marks omitted); accord United States v. Morrison, No. 04-CR-699 (DRH)(S-2), 2007 WL 4326796, at *2 (E.D.N.Y. Dec. 7, 2007). "Furthermore, the movant must show that manifest injustice will result if the court opts not to reconsider its earlier decision." Rockland Exposition, 894 F. Supp. 2d at 339 (internal quotation marks omitted).

In this case, the parties agree that the new evidence of the 2013 Deposition was not available when plaintiff's summary judgment motion was decided in 2011. They disagree, however, as to whether the 2013 Deposition would alter the outcome of the prior ruling such as to merit reconsideration.

## II. The New Evidence Merits Reconsideration

Plaintiff argues that Vissas's testimony from the 2013 Deposition contradicts his prior affidavit and that, therefore, the affidavit must be disregarded at summary judgment. It further argues that, because the court based its prior decision in part on Vissas's affidavit, the court should reconsider that decision in light of the new testimony. The court agrees.

### A. *The 2011 affidavit of James Vissas should be disregarded under the sham affidavit doctrine.*

Plaintiff argues that Vissas's prior affidavit should be disregarded under the "sham affidavit" principle because it is contradicted by his later deposition testimony. Plaintiff asserts that Vissas's testimony in his 2013 Deposition that he did not remember whether he ever seriously considered hiring Parma Tile as general contractor, and that he did not know what was going into his affidavit at the time it was made, directly contradicts his statement in his affidavit that he was "seriously considering" hiring Parma Tile as general contractor. Plaintiff also contends that Vissas's deposition testimony that the contract between Parma Tile and 14-33/35

8

Astoria was "blank" when he signed it contradicts his statement in his prior affidavit that the documents submitted with the insurance application were "true to the best of [his] knowledge and belief."

"It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." Mack v. United States, 814 F.2d 120, 125 (2d Cir. 1987). There are two requirements before this "sham affidavit" principle may apply: First, the deposition testimony and the affidavit must be truly contradictory. Second, the conflicting affidavit should not be corroborated by other evidence that would counsel in favor of its admissibility. Palazzo v. Corio, 232 F.3d 38, 43-44 (2d Cir. 2000).

Defendants argue that Vissas's statements are not truly contradictory because, in the 2013 Deposition, he merely stated that he did not remember whether he ever intended to hire Parma Tile. At least one other court in this district has treated as contradictory a witness's failure to recollect whether an earlier made statement was true. In Gilani v. GNOC Corp., No. 04-CV-2935 (ILG), 2006 WL 1120602 (E.D.N.Y. Apr. 26, 2006), the plaintiff submitted an affidavit stating that she had seen someone cleaning the floor as she entered the bathroom where she slipped. However, in her deposition, the plaintiff admitted that she did not recall seeing cleaning staff when she entered. Id. at *3. The court concluded that the plaintiff's inability to recall during her deposition testimony directly contradicted her statement in her affidavit and that the affidavit should be disregarded as a result. Id. Here, as in Gilani, Vissas's deposition testimony was not ambiguous or unclear. He was confronted with his prior affidavit and asked in almost identical language to his prior statement whether he was "seriously considering" hiring Parma Tile. He responded that he did not remember, and that he generally did not remember any of the

9

statements made in his affidavit. This court agrees with the reasoning in Gilani and finds that Vissas's deposition testimony, which at a minimum demonstrates a failure of recollection, conflicts with the statement in his affidavit. Moreover, Vissas's testimony that he believes the contract between Parma Tile and 14-33/35 Astoria was blank at the time he signed it, and that he does not know who filled it out, unequivocally conflicts with his statement that the documents were true when submitted.

Here, defendants also argue that the sham affidavit doctrine is inapplicable because, unlike in the typical circumstances where the doctrine is applied, the affidavit that conflicts with Vissas's deposition testimony predates the deposition. In the typical sham affidavit case, deposition testimony is subsequently contradicted by affidavit. See, e.g., Raskin v. Wyatt Co., 125 F.3d 55, 63 (2d Cir. 1997); Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996); Ramos v. Baldor Specialty Foods, Inc., 10 Civ. 6271(RMB), 2011 WL 2565330, at *4 (S.D.N.Y. June 16, 2011). At least two courts in this circuit appear to have found the doctrine applicable in reverse, that is, where a party's deposition contradicts his earlier non-deposition statements. See McCullough v. Burroughs, No. 04-CV-3216 (FB)(LB), 2008 WL 2620123, at *4 & n.6 (E.D.N.Y. June 30, 2008) (applying sham affidavit doctrine to both pre- and post-deposition affidavits); AB ex rel. EF v. Rhinebeck Cent. Sch. Dist., 361 F. Supp. 2d 312, 315-16 (S.D.N.Y. 2005) (accepting deposition testimony over pre-deposition allegations in complaint and post-deposition affidavit). The Third Circuit has explicitly extended the sham affidavit doctrine to cover situations where deposition testimony contradicts a previous affidavit. In re CitX Corp., Inc., 448 F.3d 672, 679-80 (3d Cir. 2006) ("We perceive no principle that cabins sham affidavits to a particular sequence."). The Third Circuit reasoned that the central tenet of the sham affidavit doctrine---"the greater reliability" generally attributed to a deposition involving cross

examination---applied equally regardless of the sequence of deposition and affidavit. Id. This court finds the Third Circuit's logic compelling and sees no reason not to adopt it here.

The Second Circuit's decision in Santos v. Murdock, 243 F.3d 681 (2d Cir. 2001), lends further support to the conclusion that Vissas's affidavit should be disregarded to the extent it contradicts his subsequent deposition testimony. At issue in Santos, which was a civil rights action against police officers, was an affidavit in which an individual named Gonzalez recanted his prior statements implicating the plaintiff, Santos, in a murder and claimed that police had coerced him into implicating Santos. Id. at 683. However, at a subsequent deposition, Gonzalez testified that he had not in fact been coerced by police into implicating Santos. Id. The plaintiff's only evidence in opposing summary judgment was the Gonzalez affidavit. Id. The Second Circuit held that the defendants had shown through Gonzalez's subsequent deposition testimony that Gonzalez would testify at trial that he was not coerced by police, and accordingly he would not be able to testify as to the contradictory statements in his prior affidavit. Id. at 684. The Second Circuit found that the affidavit could be relied on at trial only for impeachment purposes as a prior inconsistent statement, and that it therefore could not be used to sustain opposition to a motion for summary judgment. Id. Here, plaintiff has demonstrated through the 2013 Deposition that Vissas is prepared to testify that he does not remember whether he was considering using Parma Tile as the general contractor. As in Santos, the moving party here has demonstrated that the witness, Vissas, is not prepared to give testimony at trial consistent with his prior affidavit, and accordingly that affidavit should not be considered on a summary judgment motion. See id. ("[A]n implicit or explicit showing that the affiant is prepared to testify in a manner consistent with an affidavit is required to oppose summary judgment.").

11

> **B.** *The new evidence from the 2013 Deposition of James Vissas alters the court's prior conclusion as to whether Parma Tile was the general contractor.*

As previously stated by this court, "[a] representation is a statement as to <u>past</u> or <u>present</u> fact, made to the insurer by, or by the authority of the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof. A misrepresentation is a false representation . . . ." 2011 Order at 14-15 (quoting N.Y. Ins. Law § 3105(a) (emphasis added)). In its prior motion and again now, plaintiff has come forward with affirmative evidence indicating that Parma Tile never acted as the general contractor for 14-33/35 Astoria. Vissas's own admissions in both his affidavit and deposition testimony confirm that Parma Tile never acted as general contractor and that its sole function with respect to the project was financing related. His new testimony from the 2013 Deposition further indicates that he did not complete the contract that was submitted to fulfill the insurer's requirement of a contract with the general contractor. These facts provide uncontroverted support for the contention that 14-33/35 Astoria's indication on its insurance application that Parma Tile would serve as general contractor was a misstatement of fact.

In its prior ruling, this court relied on the statements in Vissas's affidavit to conclude that a genuine issue of material fact existed as to whether Parma Tile might nonetheless have been intended to serve as general contractor at the time the representation was made. 2011 Order at 16. Specifically, it found it "plausible that defendant could show that at the time he made the representation and caused Parma to execute the contract, Vissas and 14-33/35 Astoria failed to appreciate the extent to which meeting the responsibilities listed in the contract would be beyond the capabilities of Parma Tile." <u>Id.</u> Thus, the court concluded that it was possible to infer from

the affidavit that, although later untrue, the representation that Parma Tile would serve as general contractor was not necessarily untrue at the time it was made. Now that Vissas's affidavit is no longer available for defendant to rely upon in opposing summary judgment, there is simply no evidence to support the conclusion that defendants could plausibly show that there was an intention to hire Parma Tile at the time of the insurance application. A nonmovant may not rely on his statements to the effect that he "'does not remember' a particular fact, as a means of putting that fact in issue." Carter v. Newsday, Inc., 528 F. Supp. 1187, 1191 (E.D.N.Y. 1981); see also Gilani, 2006 WL 1120602, at *3-*4; Erickson v. Said, 42 F.R.D. 170, 172 (S.D.N.Y. 1967). There are no longer specific facts from which inferences favorable to defendants may be drawn. See LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998) (non-moving party "must come forward with specific facts showing that there is a genuine issue for trial").

Accordingly, in light of the newly available evidence, the court revisits its prior decision and concludes that there is no genuine issue of material fact as to whether the defendants' representation in the application that Parma Tile was the general contractor was false.

### III. Materiality

Having concluded that 14-33/35 Astoria's insurance application contained misrepresentations as to Parma Tile's role as general contractor, the court must now turn to the question, not reached in its 2011 Order, as to whether those misrepresentations were material to plaintiff's issuance of the Policy. Under applicable New York law, "an insurer may rescind an insurance policy if it was issued in reliance on material misrepresentations." Fid. & Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp., 540 F.3d 133, 139 (2d Cir. 2008) (emphasis added). A misrepresentation is material if "knowledge by the insurer of the facts misrepresented would

13

have led to a refusal by the insurer to make such contract." N.Y. Ins. Law § 3105(b)(1); Penn. Mut. Life Ins. Co. v. Remling, 702 N.Y.S.2d 375, 376 (App. Div. 2000) (materiality exists where "had the insurer known the truth, it would not have issued the policy").

Although usually a fact question for the jury, materiality may be decided on summary judgment "where the evidence concerning the materiality is clear and substantially uncontradicted." Berger v. Manhattan Life Ins. Co., 805 F. Supp. 1097, 1102 (S.D.N.Y. 1992). On summary judgment, an insurer must "come[] forward with proof that it would not have issued the policy had it known the undisclosed facts." First Fin. Ins. Co. v. Allstate Interior Demolition Corp., 193 F.3d 109, 119 (2d Cir. 1999). The insurer "may not rely merely on statements by representatives of the insurer that it would not have issued the policy but for the representation." Id.; accord Parmar v. Hermitage Ins. Co., 800 N.Y.S.2d 726, 728 (App. Div. 2005). Rather, "an insurer must submit evidence of its underwriting practices with respect to similar applicants." First Fin. Ins. Co., 193 F.3d at 119. "To establish materiality of misrepresentations as a matter of law, the insurer must present documentation concerning its underwriting practices, such as underwriting manuals, bulletins or rules pertaining to similar risks, to establish that it would not have issued the same policy if the correct information had been disclosed in the application." Precision Auto Accessories, Inc. v. Utica First Ins. Co., 859 N.Y.S.2d 799, 801-02 (App. Div. 2008) (quoting Curanovic v. N.Y. Cent. Mut. Fire Ins. Co., 762 N.Y.S.2d 148, 151 (App. Div. 2003)).

In support of its prior motion for summary judgment, plaintiff submitted the affidavit of its claims examiner, Mark Shockley. Aff. of Mark Shockley in Supp. of Pl.'s Mot. for Summ. J. ("Shockley Aff."), DE #52. Regarding the insurance policy, Shockley states: "The only reason the U.S. Underwriters agreed to provide . . . coverage . . . was that the representations made

14

during the application process by 14-33/35 Astoria Blvd. LLC stated that it retained Parma Tile to act as the general contractor for the relevant project, that Parma Tile had appropriate insurance to act as the general contractor for the project, and that [] 14-33/35 Astoria Blvd. LLC was an additional insured under Parma Tile's Policy." Id. ¶ 27. He further states that "[i]n order to ensure that U.S. Underwriters is not going to have to cover an owner of a property under construction for liability related to that construction work under an owner's protective general liability policy, U.S. Underwriters' [sic] requires that the insured provide documentation that they have hired a general contractor, that the contractor is insured, and that the applicant is an additional insured under the general contractor's policy." Id. ¶ 38.

In connection with its original motion papers, plaintiff also submitted a copy of its "Underwriting Guidelines" for "Owner's/Tenant's Protective – OTP."[5] Id., Ex. 16. The Underwriting Guidelines show that plaintiff generally requires applicants for "Owner's/Tenant's Protective" policies to provide (1) a copy of written contract between the applicant and the general contractor with a description of the work being done for the project and its cost; and (2) a certificate of insurance in the name of the general contractor. Under "Application Requirements," the Underwriting Guidelines list:

> c. A copy of the contract between the applicant and the General Contractor providing A description of the project and the total cost . . . .
>
> d. A copy of the Certificate of Insurance from the General Contractor confirming the limits of insurance and the Additional Insured status of the applicant . . . .

---

[5] In its opposition to plaintiff's original motion for summary judgment, defendants argued that the Underwriting Guidelines were inapplicable because plaintiff issued a "Commercial Liability Policy" to 14-33/35 Astoria, and not an Owner's Protective General Liability Policy. DE #45, at ECF 6-7. There is simply no support in the record for this argument, and the documents themselves belie the contention. The Underwriting Guidelines apply to "Owner's/Tenant's Protective" Applications, Shockley Aff., Ex. 16, at ECF 3, and "Commercial General Liability" is one of two types of coverage available for Owner's/Tenant's Protective (the other is "Terrorism Coverage"). Id. at ECF 6. The application submitted by 14-33/35 Astoria was explicitly for "Owner's/Tenant's Protective." Verveniotis Decl., Ex. A.

15

Id., at ECF 3. Below the "Application Requirements," the Underwriting Guidelines state in full caps: "ALL OF THE ABOVE ITEMS MUST BE RECEIVED AND <u>APPROVED BY AN UNDERWRITER</u> PRIOR TO BINDING." Id. Under "Eligibility Criteria," the Underwriting Guidelines state that "Eligible Operations will answer true to all of the following," and then list a set of criteria that include: (1) "One General Contractor is being hired to handle the project" and (2) "Applicant is the entity entering into the written contract with the General Contractor." Id. at ECF 5. In the "Underwriting Issues" section, the Underwriting Guidelines instruct underwriters to thoroughly review all contracts received and that contracts should include: (1) "cost of the entire project" and (2) "an itemized description of the work being done." Id. at ECF 7. It also directs underwriters to "verify that the Certificate Holder [on the Certificate of Insurance] matches the name of our Named Insured and the entity offering the Certificate is the General Contractor named in the contract between the applicant and the General Contractor." Id.

In connection with its insurance application, 14-33/35 Astoria submitted (1) a contract with Parma Tile that listed a description of the work to be performed by Parma Tile and its cost and (2) a certificate of insurance for Parma Tile. However, there is overwhelming evidence that Parma Tile never served as general contractor for the project to which the insurance application related, and there is no evidence that it was ever intended to serve as general contractor. Without those documents submitted to plaintiff indicating that Parma Tile would serve as general contractor, the Underwriting Guidelines dictate that the application requirements would not have been met, and therefore that the Policy was issued by plaintiff in reliance on those documents.

Moreover, the back-and-forth that took place during the processing of 14-33/35 Astoria's application corroborates the conclusion that the Policy would not have been issued but for the

16

misrepresentations as to Parma Tile's role. The quote from plaintiff indicated that the account was subject to receipt of the signed contract with the general contractor and copy of the general contractor's insurance, and emails indicated that coverage under the Policy would not be bound until those items were received. See 2011 Order at 3-4. It was only once those items were received that coverage was bound.

Viewing this evidence together with the Underwriting Guidelines and the affidavit of plaintiff's examiner, the court finds that plaintiff has met its burden of demonstrating materiality as a matter of law. See John Hancock Life Ins. Co. v. Perchikov, 553 F. Supp. 2d 229, 240-41 (E.D.N.Y. 2008) (finding misrepresentation material as a matter of law in reliance on underwriting policy and two affidavits); Sirius Am. Ins. Co. v. Burlington Ins. Co., 917 N.Y.S.2d 192, 193 (App. Div. 2011) (relying on averment of insurer's underwriter and internal underwriting documentation); Precision Auto Accessories, Inc. v. Utica First Ins. Co., 859 N.Y.S.2d 799, 802 (App. Div. 2008) (relying on affidavit of insurer's president and copy of underwriting guidelines); cf. Curanovic, 762 N.Y.S.2d at 151 (App. Div. 2003) (basing denial of summary judgment on insurer's failure to provide written underwriting policy).

Accordingly, because plaintiff has shown that 14-33/35 Astoria made material representations on its insurance application, it has established that it is entitled to summary judgment as a matter of law on its rescission claim. See Perchikov, 553 F. Supp. 2d at 236 ("Under New York law, an insurance policy is considered void ab initio if the insured made misrepresentations to the insurance company that were material to the issuance of the policy.").

## CONCLUSION

For the foregoing reasons, the court has reconsidered its prior order, and plaintiff's motion for summary judgment as to its rescission claim is granted. As a result, plaintiff has no obligation arising out of the Policy to indemnify or defend 14-33/35 Astoria or any other named defendant. The Clerk of Court is directed to enter judgment accordingly.[6]

SO ORDERED.

                                                                                              _/s/_____
                                                                                              Allyne R. Ross
                                                                                              United States District Judge

Dated:        April 23, 2014
               Brooklyn, New York

---

[6] In its original motion, plaintiff requested a default judgment against defendants George's Home Improvement Corp., George Sifounis, Alpha Engineering & Inspections, P.C., Polis, Inc., Mouad Moqrane, and Hassan Lazgani. If plaintiff now wishes to pursue default judgment against those defendants, it may seek a certificate of default as to each of those defendants from the Clerk of Court and submit a proposed order of default judgment to this court.